**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**NEW HAVEN DIVISION**

| | | |
|---|---|---|
| In re: | : | |
| | : | CHAPTER 11 |
| BAILEY'S EXPRESS, INC., | : | |
| | : | CASE NO. 17-31042(AMN) |
| Debtor. | : | |
| | : | |
| | : | |
| BAILEY'S EXPRESS, INC. | : | |
| | : | |
| Movant, | : | |
| v. | : | |
| | : | |
| BANKWELL and SAIA, INC., | : | |
| | : | |
| Respondents. | | |

**MOTION FOR AN ORDER UNDER 11 U.S.C. §§105(a), 363, AND 365 AND FEDERAL RULES OF BANKRUPTCY PROCEDURE 6004 AND 6006 AUTHORIZING AND APPROVING (A) THE SALE OF THE DEBTOR'S TRUCKS, FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES AND (B) OTHER RELATED RELIEF**

TO THE HONORABLE ANN M. NEVINS, UNITED STATES BANKRUPTCY JUDGE:

Bailey's Express, Inc. (the "Debtor" or "Bailey's"), as debtor and debtor-in-possession, by and through its undersigned counsel, hereby respectfully moves this Court for an order pursuant to Sections 105(a), 363 and 365 and Federal Rules of Bankruptcy Procedure 6004 and 6006, authorizing and approving (a) the sale of the Debtor's trucks, free and clear of liens, claims, interests and encumbrances and (b) other related relief (the "Motion"). In support thereof, the Debtor respectfully represents as follows:

## INTRODUCTION

1. On July 13, 2017 (the "Petition Date"), the Debtor filed a voluntary petition in this Court commencing a case for relief under Chapter 11 of the Bankruptcy Code (the "Chapter 11 Case").

2. This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief requested herein are Bankruptcy Code Sections 105, 363(b) and (f), 365 and Rules 6004 and 6006 of the Federal Rules of Bankruptcy Procedure.

## BACKGROUND

4. Bailey's was a less then truckload carrier that provided shipping services across the nation and was dedicated to helping Connecticut, Massachusetts and Rhode Island companies market their products throughout the United States including Hawaii and Alaska. Bailey's also provided services to Mexico, Puerto Rico and Canada.

5. Bailey's was in business since 1920 and until recent years has been financially sound but because of the downturn in the economy, the increased costs of doing business and the new competition from businesses like Walmart and Amazon, which are now providing their own direct shipping services, Bailey's suffered substantial losses. Bailey's was unable to pay its debts as they come due and had to suspend shipping services. Bailey's sought protection under Chapter 11 for the purposes of working through its financial difficulties, restoring services and reorganizing the business.

6. Since the Petition Date the Debtor explored three opportunities to restart the business but despite the Debtor's best efforts, the Debtor has determined that there is no realistic opportunity for a successful restart of the operations.

7. Once the Debtor determined that there was no viable restart program that could be implemented in a reasonable period of time, it immediately turned its attention to a liquidation process to maximize value for the Estate and minimize expenses.

8. The Debtor has been actively engaged in discussions with two separate potential stalking horse bidders for the sale of the 23 trucks owned by the Debtor (the "Trucks").

9. After considering the alternatives, the Debtor has determined that it is of the best interests of the creditors to enter into a certain Purchase Agreement dated October 17, 2017 (together with related documents, agreements and instruments) (the "Purchase Agreement") for the sale (the "Sale") of the Trucks owned by the Debtor as set forth in the Purchase Agreement to Bayshore Ford Truck Sales, LLC (the "Purchaser") for a purchase price of $145,000. A copy of the Purchase Agreement is attached to the Sale Order as Exhibit A.

10. As of the Petition Date, Bankwell held a secured claim against the Debtor in the approximate amount of $11,000 (the "Bankwell Claim"). Bankwell holds a security interest in all of the DIP Collateral (as that term is defined in cash collateral orders) which includes the Trucks.

11. SAIA, INC. ("SAIA") interposed an objection to the Debtor's use of cash collateral in which SAIA asserted that the Debtor was holding cash in trust on behalf of SAIA pursuant to an interline trust doctrine theory. To resolve the objection, the Debtor agreed to provide adequate protection to SAIA in the form of a lien, subordinate to the security interest held by Bankwell on the DIP collateral (as that term is defined in Cash Collateral orders), but

only to the extent that SAIA successfully establishes that SAIA is entitled to interpose an Interline Trust on cash selected by the Debtor (the "SAIA Conditional Lien"). SAIA asserts that it holds a claim in the amount of $846,807.78.

12. The Debtor has further determined that it is in the best interests of the estate to conduct an auction to solicit higher and better bids for the Trucks on terms substantially similar to those contained in the Purchase Agreement.

13. The Sale as set forth in the Purchase Agreement is in the best interests of the Debtor's bankruptcy estate, creditors and other parties in interest since the sale will maximize the value received for the Trucks.

**RELIEF REQUESTED**

14. By this Motion, the Debtor seeks the entry of an order (the "Sale Order") authorizing the Debtor to sell its Trucks in accordance with the terms of the Purchase Agreement entered into between the Debtor and the Purchaser, or to such other entity or entities constituting a "Qualified Bidder" which shall submit a bid deemed by the Court to be the highest and best offer ("Winning Bid"). The Debtor proposes to sell the Trucks to the Purchaser or to the maker of the Winning Bid (the "Winning Bidder"), other than in the ordinary course of business, free and clear of liens, claims, encumbrances and interests pursuant to 11 U.S.C. §§105, 363(b) and (f) and Rules 6004 and 6006 of the Federal Rules of Bankruptcy Procedure.

15. The aforedescribed sale (the "Sale") shall be subject to higher and better offers. The Trucks shall be sold pursuant to the procedures to be established by the Bankruptcy Court pursuant to its Order (a) Authorizing and Approving Bidding Procedures, (b) Scheduling Bid Deadline, Auction Date and Sale Hearing, (c) Authorizing and Approving the Payment of an Expense Reimbursement, (d) Approving the Form and Manner of Notice Thereof and (e)

Granting Related Relief, All in Connection with the Sale of the Trucks and Trailers (the "Sale Procedures Order."

16. **CREDITORS AND PARTIES IN INTEREST ARE ADVISED TO REVIEW THE PURCHASE AGREEMENT FOR THE COMPLETE TERMS AND CONDITIONS UPON WHICH THE TRUCK AND TRAILERS WILL BE SOLD. THIS MOTION ONLY CONTAINS A SUMMARY. THE SALE SHALL BE SUBJECT TO THE PROCEDURES OUTLINES IN THE SALES PROCEDURES ORDER.**

## BASIS FOR RELIEF

### A. Motion To Sell Property Of The Estate Other Than In The Ordinary Course Of Business Free And Clear Of Any Liens. Claims. Interests or Encumbrances

1. Pursuant to 11 U.S.C. §§ 363(b) and (f), a debtor-in-possession, after notice and a hearing, may sell property of the estate other than in the ordinary course of business free and clear of any liens, claims, encumbrances or interests.

2. The Debtor submits that approval of the relief sought herein is in the best interests of their bankruptcy estates, creditors and other parties in interest. The Debtor further submits that delaying a sale of the Trucks will result in a diminution of the value of these assets. Trucks sitting idly for any length of time can lead to mechanical problems and deterioration of the systems, especially during the winter.

3. As such, it is imperative that the Debtor move forward with the sale of the Trucks on an expedited basis and prior to confirming a plan.

4. After careful consideration of all of their various options and cognizant of its fiduciary duties to creditors, the Debtor determined that the Debtor was not in a position to restart its business and reorganize as a going concern and that the only viable alternative was to

proceed with an expeditious liquidation and the proposed sale of the Trucks facilitates that process and represents a sound exercise of the Debtor's business judgment.

5. The Debtor submits that the consideration to be paid by the Purchaser or other Winning Bidder, as applicable, represents the fair market value for the Trucks. Moreover, the Sale to the Purchaser will be subject to the Sale Procedures Order which sets forth the means for obtaining the highest and best offer for the Assets in order to maximize value for the bankruptcy estate.

6. Although the Trucks represent a principal asset of the Debtor, it is not a sale of substantially all of the assets of the Chapter 11 Debtor "outside" a plan of reorganization. In re: Lionel Corp., 722 F.2d. 1063 (2d. Cir. 1983). The Lionel decision requires that a debtor articulate a sound business reason for a sale of substantially all of its assets other than in the ordinary course of business by way of a motion pursuant to 11 U.S.C. § 363 rather than through a plan of reorganization or liquidation. Factors set forth by the Second Circuit Court of Appeals in the Lionel decision weigh in favor of this Court approving the Sale in the case at bar

(a) There is not a substantial likelihood that a plan of reorganization can be proposed and confirmed in the near future. Although the Debtor has filed a Plan of Liquidation and is seeking to move forward expeditiously with confirmation of same, the sale of the Trucks should not be delayed until confirmation because as set forth herein, the Trucks will deteriorate in value if not sold on an expeditious basis.

(b) The consideration to be obtained from the Sale as proposed represents fair market value for the Trucks and remains subject to higher and better offers which the Debtor continues to solicit.

(c) There is no probability that Bailey can revitalize the business given the level of debt and the lack of time and resources presently available to do so.

7. Although the Debtor is not seeking to sell substantially all of its assets, the foregoing factors nonetheless militate in favor of this Court approving the proposed Sale in accordance with the analysis set forth in Lionel. Moreover, it is respectfully submitted that the

Sale should be authorized where the value received is the highest and best available and the debtor has established that the assets will lose value if not disposed of promptly. See, In re: Chateaugav Corporation, 973 F.2d. 141 f2d. Cir. 1982).

8. Pursuant to Local Rule of Bankruptcy Procedure 6004-1, an appraisal is ordinarily required prior to any sale not in the ordinary course of business unless the trustee or debtor-in-possession determines that such appraisal is not warranted under the facts of the case. In light of the short time frame sought for the sale of the Trucks, the costs and delay associated with the procurement of an appraisal, and the limited market for the Trucks, it is respectfully submitted that sufficient cause exists to dispense with the need for an appraisal at this time.

**B. Purchaser Entitled to Protections Of Bankruptcy Code Section 363(m)**

9. Section 363(m) of the Bankruptcy code provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m). While the Bankruptcy Code does not define "good faith", the Seventh Circuit in In the Matter of Andy Frain Services. Inc., 798 F.2d 1113 (7th Cir. 1986) held that:

> The requirement that a purchaser act in good faith . . . speaks to the integrity of his conduct in the course of the sale proceedings. Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.

789 F.2d at 1125 (emphasis omitted) (quoting In re Rock Indus. Mach. Corp., 572 F.2d 1195,1198 (7th Cir. 1978) (interpreting Bankruptcy Rule 805, the precursor of section 363(m)).

10. As set forth above, the Purchaser was selected by the Debtor only after determining that the Purchaser's terms were likely to be the most favorable submitted by any

party. The Purchase Agreement was the result of arms-length negotiations and was not tainted by fraud, collusion or bad faith. Accordingly, the Debtor respectfully requests that the Court make a finding that the Purchaser is entitled to the protections of 11 U.S.C. § 363(m).

## C. The Sale Should Be Free And Clear Of Liens, Claims, Encumbrances and Interests

11. Under Section 363(f) of the Bankruptcy Code, a debtor-in-possession may sell property free and clear of any lien, claim, or interest in such property if, among other things:

(a) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(b) such entity consents;

(c) such interest is a lien and the price at which such property is sole is greater than all liens on such property;

(d) such interest is in bona fide dispute; or

(e) such entity could be compelled in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

12. Because Section 363(f) of the Bankruptcy Code is drafted in the disjunctive, satisfaction of any one of its five requirements will be sufficient to permit the sale of the Assets free and clear of liens, claims, encumbrances, pledges, mortgages, security interests, charges, options, and other interests (collectively, the "Interests"). The Debtor satisfies at least two of these requirements. The proceeds of the Sale will be in excess of the Bankwell Claim. SAIA's Conditional Lien in an aggregate amount exceeds the value of Bailey's interest in the Trucks. SAIA consents to the relief requested herein thereby satisfying § 363(f)(2) of the Bankruptcy Code as to such secured creditors.

13. In addition, all holders of Interests, including Bankwell and SAIA, could be compelled to accept a money satisfaction of their Interests in legal or equitable proceedings in

accordance with Section 363(f)(5) of the Bankruptcy Code. Such legal or equitable proceedings include proceedings to confirm a plan of reorganization, under which the holder of a lien may be compelled to accept payment in satisfaction of its lien pursuant to section 1129(b)(2)(A) of the Bankruptcy Code.

14. Moreover, between the other assets of the Debtor which includes commercial real property, accounts receivable, machinery and equipment and litigation claims, SAIA's Conditional Lien has more than sufficient collateral to adequately protect its interest. In fact, section 1129(b)(2)(A) of the Bankruptcy Code specifically allows a Debtor to sell property subject to a lien free and clear of such lien if such lien attaches to the net proceeds of the sale, subject to any claims and defenses the debtor may possess with respect thereto. The Debtor submits that any Interests in the Trucks sold immediately attach to the net proceeds of the Sale in this case.

15. Based upon the foregoing, the sale of the Trucks, free and clear of liens, claims, encumbrances and interests, should be approved under section 363(f) of the Bankruptcy Code.

**D. The Court Should Waive Or Reduce The Fourteen Day Stay Set Forth In Fed. R. Bankr. P. 6004(h) and 6006(d)**

16. Pursuant to Bankruptcy Rule 6004(h) and 6006(d), unless the court orders otherwise, all orders authorizing the sale of property pursuant to § 363 of the Bankruptcy Code and all orders authorizing the assumption and assignment of executory contracts and unexpired leases are automatically stayed for 14 days after entry of the order. Fed. R. Bankr. P. 6004(g) and 6006(d). The purpose of Bankruptcy Rule 6004(h) and 6006(d) is to provide sufficient time for an objecting party to appeal before the order can be implemented. See Advisory Committee Notes to Fed. R. Bankr. P. 6004(h).

17. Although Bankruptcy Rule 6004(h) and 6006(d), and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the 14 day stay period, Collier suggests that the 14 day stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure." 10 Collier on Bankruptcy 15th Ed. Rev., ¶ 6064.09 (L. King, 15th rev. ed. 1988). Furthermore, Collier provides that if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to file such appeal. Id.

18. To preserve the value of the Trucks, it is critical that the Debtor close the Sale as soon as possible after all closing conditions have been met or waived. Accordingly, the Debtor respectfully requests that the Court waive the 14-day stay periods to the minimum amount of time needed by any objecting party to file its appeal to allow the Sale to close as provided pursuant to the terms of the Purchase Agreement.

WHEREFORE, the Debtor respectfully requests that the Court issue an order under 11 U.S.C. §§105(a), 363 and 365 and Fed. R. Bankr. P. 6004 and 6006 authorizing and approving (a) the sale of the Trucks free and clear of liens, claims, interests and encumbrances and (b) other

related relief; and granting such other and further relief as the Court may deem just and proper.

Dated: Bridgeport, CT
October 18, 2017

Respectfully submitted,

PULLMAN & COMLEY, LLC
COUNSEL TO THE DEBTOR

By:/s/ Elizabeth J. Austin
Elizabeth J. Austin (ct04384)
Jessica Grossarth Kennedy (ct23975)
Pullman & Comley, LLC
850 Main Street, P.O. Box 7006
Bridgeport, CT 06601-7006
Tel: 203 330 2000
Fax: 203 576 8888
eaustin@pullcom.com
jgrossarth@pullcom.com