**UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
NEW HAVEN DIVISION**

| | |
|---|---|
| In re: | : |
| | : CHAPTER 11 |
| BAILEY'S EXPRESS, INC., | : |
| | : CASE NO. 17-31042(AMN) |
| Debtor. | : |
| | : |
| | : |

**AMENDED
MOTION FOR AN ORDER UNDER 11 U.S.C. §§105(a), 363, AND 365 AND FEDERAL
RULES OF BANKRUPTCY PROCEDURE 6004 AND 6006 AUTHORIZING AND
APPROVING (A) THE SALE OF THE DEBTOR'S COMMERCIAL REAL PROPERTY,
FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES AND
(B) OTHER RELATED RELIEF**

TO THE HONORABLE ANN M. NEVINS, UNITED STATES BANKRUPTCY JUDGE:

David Allen, Plan Administrator ("Plan Administrator") of the bankruptcy estate of Bailey's Express, Inc. (the "Debtor" or "Bailey's"), by and through his undersigned counsel, hereby respectfully moves this Court for an order pursuant to Sections 105(a), 363 and 365 and Federal Rules of Bankruptcy Procedure 6004 and 6006, authorizing and approving (a) the sale of the Debtor's commercial real property located at 11 Industrial Park Road, Middletown, Connecticut (the "Property"), free and clear of liens, claims, interests and encumbrances and (b) other related relief (the "Motion"). In support thereof, the Plan Administrator respectfully represents as follows:

**INTRODUCTION**

1. On July 13, 2017 (the "Petition Date"), the Debtor filed a voluntary petition in this Court commencing a case for relief under Chapter 11 of the Bankruptcy Code (the "Chapter 11 Case").

2. This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief requested herein are Bankruptcy Code Sections 105, 363(b) and (f), 365 and Rules 6004 and 6006 of the Federal Rules of Bankruptcy Procedure.

## BACKGROUND

4. Bailey's was a less than truckload carrier that provided shipping services across the nation and was dedicated to helping Connecticut, Massachusetts and Rhode Island companies market their products throughout the United States including Hawaii and Alaska. Bailey's also provided services to Mexico, Puerto Rico and Canada.

5. Bailey's was in business since 1920 and until recent years has been financially sound. Because of the downturn in the economy, the increased costs of doing business and the new competition from businesses like Walmart and Amazon, which are now providing their own direct shipping services, Bailey's suffered substantial losses. Bailey's was unable to pay its debts as they come due and had to suspend shipping services. Bailey's sought protection under Chapter 11 for the purposes of working through its financial difficulties, restoring services and reorganizing the business.

6. After exploring three opportunities to restart the business, the Debtor determined that there was no realistic opportunity for a successful restart of the operations.

7. On November 9, 2017, the Debtor filed its Second Amended Plan of Liquidation and Second Amended Disclosure Statement. The Disclosure Statement was approved by Order of this Court on November 17, 2017.

8. On December 28, 2017 the Debtor filed a Second Amended Plan of Liquidation as modified on December 28, 2017 (the "Plan").

9. On January 12, 2018 the Court entered an Order confirming the Plan.

10. Pursuant to the Plan, David Allen was deemed the Plan Administrator for the Debtor's Estate. The Plan Administrator assumed his duties as of January 26, 2018, the Effective Date of the Plan.

11. The Plan grants certain powers and authorities to the Plan Administrator, including the power and authority to liquidate and collect the remaining assets of the Debtor to cash in accordance with the Plan.

12. On October 16, 2017, the Debtor applied to retain Trevor Davis Commercial Real Estate, LLC as real estate broker (the "Broker") to assist in the marketing and the sale of the Property which application was approved by Order dated November 17, 2017. For its services, the Broker will receive a commission of six percent (6%) of the purchase price, which will be paid from the proceeds of the Sale at Closing, three percent (3%) of which will be paid to the Purchaser's Broker, NAI James E. Hanson.

13. Since its retention the Broker has engaged in a marketing process that has generated interest from over ten parties interested in purchasing the Property.

14. After considering the alternatives, the Plan Administrator has determined that it is of the best interests of the creditors to enter into a Real Estate Purchase Agreement dated

September 26, 2018 (the "Purchase Agreement") for the sale (the "Sale") of the Property as set forth in the Purchase Agreement to Accurate Logistics, LLC (the "Purchaser") for a purchase price of $395,000.00. The Purchaser has provided a good faith deposit of $39,500.

15.     According to a Title Report dated September 14, 2018 the Connecticut Development Commission, now known as the Department of Economic and Community Development, recorded a mortgage in the amount of $3200 on June 5, 1973.  On information and belief this mortgage has been satisfied and will be released by the time of the sale of the Property.  There are no other mortgages, liens or encumbrances, other than Permitted Encumbrances, recorded on the Property.

16.     The Plan Administrator has further determined that it is in the best interests of the estate to conduct an auction to solicit higher and better bids for the Property on terms substantially similar to those contained in the Purchase Agreement.

17.     The proceeds of the Sale will be deposited in the distribution account (as that term is defined in the Plan) and disbursed in accordance with the Plan.  The assets remaining for the Plan Administrator to administer are two adversary proceedings seeking the recovery of preferential transfers, the collection of the claim against The John M. Hall Marital Trust and enforcement of two default judgments entered in adversary proceedings commenced by the Plan Administrator.

18.     All non-essential records have been destroyed.  All other records will be transferred to storage accessible to the Plan Administrator.

19. The Sale as set forth in the Purchase Agreement is in the best interests of the Debtor's bankruptcy estate, creditors and other parties in interest since the sale will maximize the value received for the Property.

## RELIEF REQUESTED

20. By this Motion, the Plan Administrator seeks the entry of an order (the "Sale Order") authorizing the Debtor to sell the Property in accordance with the terms of the Purchase Agreement entered into between the Debtor and the Purchaser, or to such other entity or entities constituting a "Qualified Bidder" which shall submit a bid deemed by the Court to be the highest and best offer ("Winning Bid"). The Debtor proposes to sell the Property to the Purchaser or to the maker of the Winning Bid (the "Winning Bidder"), other than in the ordinary course of business, free and clear of liens, claims, encumbrances and interests pursuant to 11 U.S.C. §§105, 363(b) and (f) and Rules 6004 and 6006 of the Federal Rules of Bankruptcy Procedure.

21. The aforedescribed sale (the "Sale") shall be subject to higher and better offers. The Property shall be sold pursuant to the procedures to be established by the Bankruptcy Court pursuant to its Order (a) Authorizing and Approving Bidding Procedures, (b) Scheduling Bid Deadline, Auction Date and Sale Hearing, (c) Authorizing and Approving the Payment of a Breakup Fee, (d) Approving the Form and Manner of Notice Thereof and (e) Granting Related Relief, All in Connection with the Sale of the Property (the "Sale Procedures Order.")

22. **CREDITORS AND PARTIES IN INTEREST ARE ADVISED TO REVIEW THE PURCHASE AGREEMENT FOR THE COMPLETE TERMS AND CONDITIONS UPON WHICH THE PROPERTY WILL BE SOLD. THIS MOTION ONLY CONTAINS**

5

**A SUMMARY.  THE SALE SHALL BE SUBJECT TO THE PROCEDURES OUTLINES IN THE SALES PROCEDURES ORDER.**

## BASIS FOR RELIEF

**A.    Motion To Sell Property Of The Estate Other Than In The Ordinary Course Of Business Free And Clear Of Any Liens. Claims. Interests or Encumbrances**

23.    Pursuant to 11 U.S.C. §§ 363(b) and (f), a debtor-in-possession, after notice and a hearing, may sell property of the estate other than in the ordinary course of business free and clear of any liens, claims, encumbrances or interests.

24.    The Plan Administrator submits that approval of the relief sought herein is in the best interests of the bankruptcy estate, its creditors and other parties in interest.  The Plan Administrator further submits that delaying a sale of the Property is not in the best interest of the estate or its creditors because of the cost of continuing to maintain and insure the Property. Moreover, winter is quickly approaching and the cost of winterizing and maintaining the Property will increase and drain the resources of the bankruptcy estate.

25.    As such, it is imperative that the Debtor move forward with the sale of the Property as quickly as reasonably possible.

26.    Pursuant to the terms of the Plan, the Plan Administrator is charged with the task of liquidating all of the assets of the estate for the benefit of the creditors and the proposed sale of the Property facilitates that process and represents a sound exercise of the Debtor's business judgment.

27.    The Plan Administrator submits that the consideration to be paid by the Purchaser or other Winning Bidder, as applicable, represents the fair market value for the Property. Moreover, the Sale to the Purchaser will be subject to the Sale Procedures Order which sets forth

the means for obtaining the highest and best offer for the Property in order to maximize value for the bankruptcy estate.

28. Because the Plan Administrator is selling the Property in accordance with his duties under the Plan, this does not constitute a sale of substantially all of the assets of the Chapter 11 Debtor "outside" a plan of reorganization in violation of In re: Lionel Corp., 722 F.2d. 1063 (2d. Cir. 1983). Even if the sale of the Property was being sold outside of a plan, the standards set forth in Lionel would still be met. The Lionel decision requires that a debtor articulate a sound business reason for a sale of substantially all of its assets other than in the ordinary course of business by way of a motion pursuant to 11 U.S.C. § 363 rather than through a plan of reorganization or liquidation. Factors set forth by the Second Circuit Court of Appeals in the Lionel decision weigh in favor of this Court approving the Sale in the case at bar

(a) There is not a substantial likelihood that a plan of reorganization can be proposed and confirmed in the near future. Although the Debtor has filed a Plan of Liquidation and is seeking to move forward expeditiously with confirmation of same, the sale of the Trucks should not be delayed until confirmation because as set forth herein, the Trucks will deteriorate in value if not sold on an expeditious basis.

(b) The consideration to be obtained from the Sale as proposed represents fair market value for the Trucks and remains subject to higher and better offers which the Debtor continues to solicit.

(c) There is no probability that Bailey can revitalize the business given the level of debt and the lack of time and resources presently available to do so.

29. Although the Plan Administrator is not seeking to sell substantially all of its assets outside of a plan, the foregoing factors would nonetheless militate in favor of this Court approving the proposed Sale in accordance with the analysis set forth in Lionel. Moreover, it is respectfully submitted that the Sale should be authorized where the value received is the highest

and best available and the debtor has established that the assets will lose value if not disposed of promptly. See, In re: Chateaugav Corporation, 973 F.2d. 141 f2d. Cir. 1982).

30.     Pursuant to Local Rule of Bankruptcy Procedure 6004-1, an appraisal is ordinarily required prior to any sale not in the ordinary course of business unless the trustee or debtor-in-possession determines that such appraisal is not warranted under the facts of the case. In light of the short time frame sought for the sale of the Property, the costs and delay associated with the procurement of an appraisal, and the limited market for the Property, it is respectfully submitted that sufficient cause exists to dispense with the need for an appraisal at this time.

**B.     Purchaser Entitled to Protections Of Bankruptcy Code Section 363(m)**

31.     Section 363(m) of the Bankruptcy code provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m). While the Bankruptcy Code does not define "good faith", the Seventh Circuit in In the Matter of Andy Frain Services. Inc., 798 F.2d 1113 (7th Cir. 1986) held that:

> The requirement that a purchaser act in good faith . . . speaks to the integrity of his conduct in the course of the sale proceedings. Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.

789 F.2d at 1125 (emphasis omitted) (quoting In re Rock Indus. Mach. Corp., 572 F.2d 1195,1198 (7th Cir. 1978) (interpreting Bankruptcy Rule 805, the precursor of section 363(m)).

32. As set forth above, the Purchaser was selected by the Debtor only after determining that the Purchaser's terms were likely to be the most favorable submitted by any party. The Purchase Agreement was the result of arms-length negotiations and was not tainted by fraud, collusion or bad faith. Accordingly, the Debtor respectfully requests that the Court make a finding that the Purchaser is entitled to the protections of 11 U.S.C. § 363(m).

C. **The Sale Should Be Free And Clear Of Liens, Claims, Encumbrances and Interests, Other Than Permitted Encumbrances.**

33. Under Section 363(f) of the Bankruptcy Code, a debtor-in-possession may sell property free and clear of any lien, claim, or interest in such property if, among other things:

(a) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(b) such entity consents;

(c) such interest is a lien and the price at which such property is sole is greater than all liens on such property;

(d) such interest is in bona fide dispute; or

(e) such entity could be compelled in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

34. Because Section 363(f) of the Bankruptcy Code is drafted in the disjunctive, satisfaction of any one of its five requirements will be sufficient to permit the sale of the Assets free and clear of liens, claims, encumbrances, pledges, mortgages, security interests, charges, options, and other interests (collectively, the "Interests"). The Debtor satisfies at least two of these requirements. There are no liens on the Property other than permitted encumbrances and as such there is no party which must consent to the relief.

9

35. In addition, any holders of Interests could be compelled to accept a money satisfaction of their Interests in legal or equitable proceedings in accordance with Section 363(f)(5) of the Bankruptcy Code. Such legal or equitable proceedings include proceedings to confirm a plan of reorganization, under which the holder of a lien may be compelled to accept payment in satisfaction of its lien pursuant to section 1129(b)(2)(A) of the Bankruptcy Code.

36. Based upon the foregoing, the sale of the Property, free and clear of liens, claims, encumbrances and interests other than permitted encumbrances, should be approved under section 363(f) of the Bankruptcy Code.

**D. The Plan Administrator Should Be Authorized to Pay the Broker's Commission at Closing**

37. Pursuant to the exclusive listing agreement between the Plan Administrator and the Broker, the Broker is entitled to receive a commission of six percent (6%) of the sale price, three percent of which will be paid to the Purchaser's Broker, NAI James E. Hanson. The exclusive listing agreement is appended to the Application for an Order Authorizing the Employment of a Real Estate Broker (ECF No. 138) which Application was approved by Order of this Court dated November 17, 2017 (ECF No. 203). The Plan Administrator seeks authority to pay the commission from the proceeds of the sale at closing.

**E. The Sale Should be Declared Exempt From Taxes Under 11 U.S.C. § 1146(a)**

38. Section 1146(a) of the Bankruptcy Code provides that:

> The issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer under a plan confirmed under Section 1129 of this Title, may not be taxed under any law imposing a stamp tax or similar law.

10

39. Because the Property is being sold pursuant to and in accordance with the Plan, all state and local conveyance taxes associated with the recording of the deed are exempt in accordance with 11 U.S.C. § 1146.

E. **The Court Should Find That There is No Requirement to Comply with the State of Connecticut Transfer Act**

40. Section 22a-134(a) of the Connecticut General Statutes which provides for the transfer of hazardous waste establishments provides in relevant part that "no person shall transfer an establishment except in accordance with the provisions of Section 22a-134 to 22a-134(e), inclusive. Notwithstanding any provision of Section 22a-134 to 22a-134(e), inclusive a person appointed by the Superior Court or any other court to sell, convey or partition real estate or a person appointed as a trustee in bankruptcy shall not be deemed a party associated with the transfer of an establishment and shall not be required to comply with the provisions of Sections 22a-134 to 22a-134(e), inclusive." *See* C.G.S. § 22a-134(a).

41. The Plan Administrator was appointed by this Court to serve as the Plan Administrator of the Plan confirmed in this case. The Plan confers upon the Plan Administrator the authority and duty to liquidate the assets of the Estate. The Property is an asset of the Estate and the Plan Administrator was authorized and appointed to sell the Property by this Court and as such, falls into the exceptions identified in C.G.S. § 22a-134(a). As such the Plan Administrator is not required to comply with the provisions of C.G.S. §§ 22a-134 to 22a-134(e).
.

11

**E.      The Court Should Waive Or Reduce The Fourteen Day Stay Set Forth In Fed. R. Bankr. P. 6004(h) and 6006(d)**

42.     Pursuant to Bankruptcy Rule 6004(h) and 6006(d), unless the court orders otherwise, all orders authorizing the sale of property pursuant to § 363 of the Bankruptcy Code and all orders authorizing the assumption and assignment of executory contracts and unexpired leases are automatically stayed for 14 days after entry of the order. Fed. R. Bankr. P. 6004(g) and 6006(d). The purpose of Bankruptcy Rule 6004(h) and 6006(d) is to provide sufficient time for an objecting party to appeal before the order can be implemented. See Advisory Committee Notes to Fed. R. Bankr. P. 6004(h).

43.     Although Bankruptcy Rule 6004(h) and 6006(d), and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the 14 day stay period, Collier suggests that the 14 day stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure." 10 Collier on Bankruptcy 15th Ed. Rev., ¶ 6064.09 (L. King, 15th rev. ed. 1988). Furthermore, Collier provides that if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to file such appeal. Id.

44.     To preserve the value of the Property, it is critical that the Debtor close the Sale as practical after all closing conditions have been met or waived. Accordingly, the Debtor respectfully requests that the Court waive the 14-day stay periods to the minimum amount of time needed by any objecting party to file its appeal to allow the Sale to close as provided pursuant to the terms of the Purchase Agreement.

WHEREFORE, the Debtor respectfully requests that the Court issue an order under 11 U.S.C. §§105(a), 363 and 365 and Fed. R. Bankr. P. 6004 and 6006 authorizing and approving (a) the sale of the Property free and clear of liens, claims, interests and encumbrances and (b) other related relief; and granting such other and further relief as the Court may deem just and proper.

Dated: Bridgeport, CT
       October 11, 2018

Respectfully submitted,

PULLMAN & COMLEY, LLC
COUNSEL TO THE PLAN ADMINISTRATOR


By: /s/ Elizabeth J. Austin
    Elizabeth J. Austin (ct04384)
    Pullman & Comley, LLC
    850 Main Street, P.O. Box 7006
    Bridgeport, CT  06601-7006
    Tel: 203 330 2243
    Fax: 203 576 8888
    eaustin@pullcom.com